O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**
**Aug. 23 hrg vacated**

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-905 PSG (JEMx) | Date | August 23, 2010 |
|---|---|---|---|
| Title | Bear Valley Family, L.P. *et al.* v. Bank Midwest, N.A. *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order GRANTING Plaintiffs' Motion to Remand

Before the Court is Plaintiffs' motion to remand this action to state court. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the papers submitted in support of and in opposition to Plaintiffs' motion, the Court GRANTS the motion.

I.   Background

In May 2008, Plaintiff Bear Valley Family, L.P., whose general partners are Plaintiffs Gary and Ben Kanter (all three, collectively, "Plaintiffs"), entered into a construction loan agreement (the "Agreement") with Defendant Bank Midwest, N.A. ("Bank Midwest").[1] Under the Agreement, Bank Midwest was to disburse up to $18 million for the development and construction of a retail facility—consisting of multiple buildings, each containing multiple commercial tenants—on land owned by Plaintiffs in Victorville, California. The loan was secured by Plaintiffs' interest in the real property.

---

[1] The facts in this background are taken from the complaint and the papers submitted in connection with the present motion. Unless otherwise indicated, they are not in dispute on the motion.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**
**Aug. 23 hrg vacated**

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-905 PSG (JEMx) | Date | August 23, 2010 |
|---|---|---|---|
| Title | Bear Valley Family, L.P. *et al.* v. Bank Midwest, N.A. *et al.* | | |

According to Plaintiffs, the Agreement obligated Bank Midwest to fund vertical construction[2] of the project upon certain conditions being met, including the satisfaction of certain "pre-leasing conditions." The pre-leasing conditions required Plaintiffs to demonstrate that, with respect to the particular building on which they wished to begin vertical construction, the "Net Operating Income" of the building (i.e., the rental income it would generate, less operating expenses) would be sufficient to provide a "Debt Service Coverage Ratio" (i.e., the ratio of the Net Operating Income to the cost of servicing a prorated portion of Plaintiffs' loan) of 1.10 to 1.00.[3] According to Plaintiffs, the Agreement provided that Bank Midwest could waive its right to withhold disbursements of the loan funds.

Plaintiffs claim that, despite their having satisfied the pre-leasing conditions for two buildings, Bank Midwest refused to disburse funds for vertical construction of those buildings. As a result, Plaintiffs used their own funds to begin the construction. According to Plaintiffs, Defendant Theodore Emmons ("Emmons")—a Senior Vice President of Bank Midwest and an employee of Bank Midwest's owner, Defendant Dickinson Financial Corporation ("Dickinson Financial")—encouraged Plaintiffs to continue funding this vertical construction, on the promise that Plaintiffs would be reimbursed when Bank Midwest determined that the pre-leasing conditions were satisfied.

In May 2009, however, with vertical construction on at least one building substantially completed, Bank Midwest notified Plaintiffs that it was ceasing all funding under the agreement,

---

[2] "Vertical" construction refers to construction of the building itself, as opposed to excavation, paving, installation of underground facilities, and other improvements to the building site, which are referred to as "horizontal" construction. *See Opp.* 12:20-24.

[3] As Defendants Bank Midwest and Dickinson Financial Corporation explain:
> The debt service coverage ratio ("DSCR") is the primary measure to determine if a property will be able to cover the expenses of the property and sustain its debt based on the cash flow the property will generate. When making real property construction loans, a DSCR of 1.0 is the minimum required to ensure the property generates sufficient cash flow to meet the loan obligations. . . . A DSCR requirement of 1.10 means the property must generate ten percent (10%) more income than is required to cover all expenses of the property and the debt service.

*See Opp.* 8:7-19 (citations omitted).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6
Aug. 23 hrg vacated

CIVIL MINUTES - GENERAL

| Case No. | ED CV 10-905 PSG (JEMx) | Date | August 23, 2010 |
|---|---|---|---|
| Title | Bear Valley Family, L.P. *et al.* v. Bank Midwest, N.A. *et al.* | | |

on the grounds that the deadline for commencing construction had expired and the pre-leasing conditions had not been met. Plaintiffs claim that when they subsequently met with Emmons to resolve this situation, Emmons offered a *quid pro quo*: Bank Midwest would resume funding Plaintiffs' project if Plaintiff Gary Kanter ("Kanter") would help Emmons obtain a Dunkin' Donuts franchise in San Diego County. Kanter was ultimately unable to deliver on this request, however, and Bank Midwest disbursed no further funds. In fact, citing a real estate tax delinquency of about fifteen thousand dollars, Bank Midwest declared an event of default under the parties' Agreement and eventually commenced foreclosure proceedings on Plaintiffs' real property.

On June 4, 2010, Plaintiffs filed this action in California state court against Bank Midwest, Emmons, and Dickinson Financial, asserting a variety of tort and contract claims, including fraud, negligent misrepresentation, breach of contract, and promissory estoppel. The foundation for many of these claims is Plaintiffs' allegation that, unbeknownst to them at the time, Bank Midwest was in dire financial condition when it negotiated the parties' Agreement and entered into the Agreement with the intention of defaulting Plaintiffs' loan and acquiring their property at below-market value, a strategy supposedly known as "loan-to-own." Plaintiffs also allege that, in urging them to proceed with vertical construction using their own funds, Bank Midwest and Dickinson Financial, through Emmons, negligently misrepresented that Bank Midwest would reimburse Plaintiffs for those costs when pre-leasing conditions were satisfied.

On June 14, 2010, the state court issued an order temporarily restraining Bank Midwest, Dickinson Financial, and their agents from proceeding to foreclose on Plaintiffs' property, pending a hearing and determination on Plaintiffs' motion for preliminary injunction. *See Conlan Decl.* ¶ 4.

On June 17, 2010, Defendants Bank Midwest and Dickinson Financial (hereinafter, "Defendants") removed the action to this Court on the basis of diversity jurisdiction, *see Notice of Removal* ¶ 3, which requires all plaintiffs to be of different citizenship than all defendants, *see Strawbridge v. Curtis,* 7 U.S. (3 Cranch) 267 (1806). Defendants apparently concede that Defendant Emmons, like Plaintiffs, is a California citizen, but contend that Emmons's citizenship should be disregarded because he is a "sham" defendant who has been fraudulently joined in this action for the purpose of defeating diversity jurisdiction. *See id.* at ¶ 10.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6
Aug. 23 hrg vacated

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-905 PSG (JEMx) | Date | August 23, 2010 |
|---|---|---|---|
| Title | Bear Valley Family, L.P. *et al.* v. Bank Midwest, N.A. *et al.* | | |

On June 28, 2010, Plaintiffs filed this motion to remand the case to state court.[4]

II.      Legal Standard

Joinder of a non-diverse defendant is fraudulent where the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Mercado v. Allstate Ins. Co.,* 340 F.3d 824, 826 (9th Cir. 2003). "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir. 2007); *see also Plute v. Roadway Package Sys.,* 141 F. Supp. 2d 10005, 1007 (N.D. Cal. 2001) ("There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion."). Indeed, if there is "*any possibility* that plaintiff will be able to establish liability against the party in question," then joinder is not fraudulent. William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 2:672 (The Rutter Group 2009) (emphasis in original). Any ambiguities and legal or factual questions must be resolved in the plaintiff's favor. *See* Schwarzer *et al.* §§ 2.672.1, 2:682.5; *see also Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir. 1983) ("In making its determination, the court must ordinarily evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.").

The Ninth Circuit has endorsed the view that, when evaluating the issue of fraudulent joinder, a court may consider facts outside the complaint for the limited purpose of identifying "the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *See Hunter v. Philip Morris USA,* 582 F.3d 1039, 1048 (9th Cir. 2009) (citing *Smallwood v. Illinois Central Railroad Co.,* 385 F.3d 568, 576 (5th Cir. 2004)). Otherwise, and ordinarily, "if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *See Smallwod,* 385 F.3d at 576.

---

[4] On July 8, 2010, the Court also issued an order to show cause ("OSC"), indicating, among other things, that it did not appear that Defendants had met the standard for removing a case on the basis of fraudulent joinder. *See* Dkt # 12. Defendants' response to the OSC, filed on July 29, 2010, is identical in all material respects to the brief filed by Defendants in opposition to the present motion.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**
**Aug. 23 hrg vacated**

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-905 PSG (JEMx) | Date | August 23, 2010 |
|---|---|---|---|
| Title | Bear Valley Family, L.P. *et al.* v. Bank Midwest, N.A. *et al.* | | |

III.  <u>Discussion</u>

Two of Plaintiffs' claims are asserted against Defendant Emmons: negligent misrepresentation and promissory estoppel.  *See Cmplt* ¶¶ 62-67, 94-100.  Defendants contend that the failure of both of those claims is "obvious according to the settled rules of the state," *see Mercado,* 340 F.3d at 826, and that Emmons's citizenship should therefore be disregarded under the doctrine of fraudulent joinder.  The Court disagrees that Plaintiffs' negligent misrepresentation claim against Emmons obviously fails.  Thus, the Court need not proceed to address Plaintiffs' claim for promissory estoppel.

"Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages."  *Fox v. Pollack,* 181 Cal. App. 3d 954, 962, 226 Cal.Rptr. 532 (1986).  Here, Plaintiffs allege that a) when urging them to proceed with vertical construction using their own funds, Defendant Emmons represented that Bank Midwest intended to reimburse them for the costs incurred when pre-leasing conditions were satisfied, *see Cmplt* ¶ 63, b) this representation turned out not to be true, *see id.* at ¶ 64, c) Emmons had no reasonable grounds for believing it to be true when he made it, *see id.,* d) Emmons intended Plaintiffs to rely on the representation and to proceed with vertical construction, *see id.* at ¶ 65, and e) Plaintiffs reasonably relied on the representation to their harm, including increased loss of improvements, loss of tenants and rental income, and increased financing costs, *see id.* at ¶¶ 66-67.

Defendants contend that Plaintiffs' negligent misrepresentation claim against Emmons obviously fails, first, because Emmons cannot be personally liable for the allegedly wrongful conduct of Bank Midwest simply by virtue of his being one of its officers.  *See Opp.* 13:23-16:8.  The Court rejects this argument.  While Plaintiffs do allege that at all relevant times Emmons was acting within the scope of his role as an officer and agent of Bank Midwest, *see Cmplt* ¶ 9, Plaintiffs' claim against Emmons rests not simply on his status as an officer of Bank Midwest, but on his own allegedly wrongful conduct as a participant in the events and transactions giving rise to this action, *see Cmplt* ¶¶ 26, 34-36, 38.  A corporation's officers "may be liable, under the rules of tort and agency, for tortious acts committed on behalf of the corporation," *see United States Liability Ins. Co. v. Haidinger-Hayes,* 1 Cal. 3d 586, 595, 83 Cal. Rptr. 418 (1970), and

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**
**Aug. 23 hrg vacated**

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-905 PSG (JEMx) | Date | August 23, 2010 |
|---|---|---|---|
| Title | Bear Valley Family, L.P. *et al.* v. Bank Midwest, N.A. *et al.* | | |

"[t]he general rule in California and elsewhere is that an agent is liable for his tortious acts that injure a third party," *Black Donuts, Inc. v. Sumitomo Corp. of Am.,* 2010 U.S. Dist. LEXIS 30859, *20 (C.D. Cal. Mar. 3, 2010) (*citing* Cal. Civ. Code § 2343(3)).

Defendants also contend that an agent cannot be personally liable in tort for actions taken within the course and scope of his employment where, as here, those acts are alleged to have caused only economic injury. *See Opp.* 16:4-8. Defendants cite *United States Liability Ins. Co. v. Haidinger-Hayes,* 1 Cal. 3d 586, 595 (1970), and *Nasrawi v. Buck Consultants, LLC,* 2010 WL 1948641 (E.D. Cal. May 12, 2010), in support of this proposition. Those cases, however, do not sufficiently support that proposition. In fact, the court in *Haidinger-Hayes* simply made the observation, in discussing general principles governing the tort liability of corporate officers, that "[l]iability imposed upon agents for active participation in tortious acts of the principal have [sic] been mostly restricted to cases involving physical injury, not pecuniary harm, to third persons." *See Haidinger-Hayes,* 1 Cal. 3d at 595. And while the district court in *Nasrawi* did speak of "*Haidinger-Hayes*' holding that 'liability imposed upon agents is limited to cases involving physical injury and/or property damage,'" *see Nasrawi,* 2010 WL 1948641, at *10 (quoting *Haidinger-Hayes,* 1 Cal. 3d at 595), that reading actually misquotes the language of the case and mischaracterizes a passing historical observation as the court's holding, *see Haidinger-Hayes,* 1 Cal. 3d at 595. *Nasrawi*'s reading of *Haidinger-Hayes* is also at odds with more recent statements from California courts concerning relevant tort and agency principles, including the principle that "[a]n agent or employee is *always* liable for his own torts, whether his employer is liable or not." *See Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone,* 107 Cal. App. 4th 54, 68, 131 Cal. Rptr. 2d 777 (2003) (emphasis added). And, finally, *Nasrawi*'s reading of *Haidinger-Hayes* is at odds with a number of recent district court decisions that, in remanding cases to state court over "sham defendant" arguments, upheld the viability of tort claims for pecuniary losses against agents acting within the scope of their employment. *See, e.g., Black Donuts,* 2010 U.S. Dist. LEXIS 30859 at *20-30; *Leung v. Sumitomo Corp. of Am.,* 2010 U.S. Dist. LEXIS 29039, *9-12 (N.D. Cal. Mar. 9, 2010); *Castagnola Fleet Mgmt. v. Sea-Pac Ins. Managers, Inc.,* 2010 U.S. Dist. LEXIS 20523, *8-10 (S.D. Cal. Mar. 8, 2010). The Court therefore rejects this argument from Defendants. *See Black Donuts,* 2010 U.S. Dist. LEXIS 30859 at *9 ("In applying the fraudulent joinder rule, it should be emphasized that the state law must be 'settled' and the complaint's deficiency must be 'obvious.'").

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**
**Aug. 23 hrg vacated**

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-905 PSG (JEMx) | Date | August 23, 2010 |
|---|---|---|---|
| Title | Bear Valley Family, L.P. *et al.* v. Bank Midwest, N.A. *et al.* | | |

Defendants also argue that Plaintiffs' claims against Emmons fail because "the construction pre-leasing conditions required by the Loan were never satisfied" and because any "allegations of an agreement or representations to fund vertical construction on modified terms are barred by the statute of frauds." *See Opp.* 2:4-6. To the extent these arguments are sound, however, they apply to Plaintiffs' claims as asserted against all three defendants, not just to Plaintiffs' claims as asserted against Defendant Emmons. Because such arguments go to the substantive merits of the case, rather than to the jurisdictional issue of whether a particular defendant is a "sham defendant," those arguments will not support a finding of fraudulent joinder. *See Black Donuts,* 2010 U.S. Dist. LEXIS 30859 at *14-15 ("[W]hen there are multiple defendants and the plaintiff's complaint states factually similar allegations against all of the defendants, a finding of fraudulent joinder is necessarily intertwined with the substantive merits of the various causes of action. . . . In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such. . . . For purposes of determining whether the court may exercise its diversity jurisdiction, such a merits-based decision is improper.") (internal quotations and citations omitted); *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1044 (9th Cir. 2009) ("[W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit." (*quoting Smallwood,* 385 F.3d at 574)).

Finally, Defendants argue that "allegations of an attempt to extort a Dunkin' Donuts franchise in exchange for construction funding are barred by the statute of frauds and do not establish detrimental reliance or damages." *See Opp.* 2:6-9. As noted above, however, Plaintiffs' claim for negligent misrepresentation does not necessarily rely on allegations relating to Emmons's purported attempt to "extort a Dunkin' Donuts franchise." The Court therefore rejects this final argument.

Accordingly, the Court finds that Defendants have failed to establish that Plaintiffs' claim for negligent misrepresentation against Defendant Emmons obviously fails "according to the settled rules of the state." *See Mercado,* 340 F.3d at 826. Thus, Emmons's citizenship should not be disregarded under the doctrine of fraudulent joinder, and this case must be remanded for lack of subject matter jurisdiction. *See* 28 U.S.C. 1447(c).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6
Aug. 23 hrg vacated**

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 10-905 PSG (JEMx) | Date | August 23, 2010 |
|---|---|---|---|
| Title | Bear Valley Family, L.P. *et al.* v. Bank Midwest, N.A. *et al.* | | |

IV. <u>Conclusion</u>

  For the foregoing reasons, the Court GRANTS Plaintiffs' motion and REMANDS this case to state court.

  **IT IS SO ORDERED.**